## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

————

In re:  IN THE MATTER OF THE SEARCH
OF FAIR FINANCE, FAIR FINANCIAL, OBSIDIAN ENTERPRISES
AND TIMOTHY S. DURHAM

————

AKRON BEACON JOURNAL; INDIANAPOLIS BUSINESS JOURNAL
Movants-Appellants

and

INDIANAPOLIS STAR; WALL STREET JOURNAL
Movants

v.

UNITED STATES OF AMERICA
Interested Party - Appellee

————

On Appeal from the United States District Court
for the Northern District of Ohio
Eastern Division

————

## BRIEF OF APPELLANTS THE AKRON BEACON JOURNAL
## AND THE INDIANAPOLIS BUSINESS JOURNAL

KAREN C. LEFTON (0024522)
KERRI L. KELLER (0075075)
CAROLINE L. MARKS (0071150)
**BROUSE McDOWELL, L.P.A.**
388 South Main Street, Suite 500
Akron, OH  44311

Telephone: 330-535-5711
Facsimile: 330-253-8601
E-mail:  klefton@brouse.com
        kkeller@brouse.com
        cmarks@brouse.com

Attorneys for Appellants
The Akron Beacon Journal and
the Indianapolis Business Journal

## CORPORATE DISCLOSURE STATEMENT

Pursuant to 6th Cir. R. 26.1, The Akron Beacon Journal and the Indianapolis Business Journal make the following disclosures: (1) Neither the Akron Beacon Journal nor the Indianapolis Business Journal is a subsidiary or affiliate of a publicly owned corporation, and (2) there is not a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome.

/s/ Karen C. Lefton
Karen C. Lefton (0024522)
**BROUSE McDOWELL, L.P.A**.
388 South Main Street, Suite 500
Akron, OH 44311
Telephone: 330-535-5711
Facsimile: 330-253-8601
E-mail: klefton@brouse.com

Attorney for Appellants
The Akron Beacon Journal and
the Indianapolis Business Journal

**<u>TABLE OF CONTENTS</u>**

CORPORATE DISCLOSURE STATEMENT ......................................................iii

STATEMENT IN SUPPORT OF ORAL ARGUMENT ........................................ix

JURISDICTIONAL STATEMENT....................................................................1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ...........................2

STATEMENT OF THE CASE..........................................................................3

STATEMENT OF THE FACTS ……...............................................................6

SUMMARY OF ARGUMENT .......................................................................10

ARGUMENT ..............................................................................................13

I.      STANDARDS OF REVIEW .................................................................13

        A.  Common Law Right of Access………………………………………...13

        B.  First Amendment Right of Access...…………………………………14

II.     FIRST ISSUE PRESENTED FOR REVIEW:  The District Court Erred by Denying the Newspapers' Amended Motion to Unseal Search Warrant Documents Where It Failed to Make Findings and Conclusions Specific Enough to Allow this Court to Determine that Each Document Should Be Sealed...........................................................................................16

        A.  Procedural Requirements for Sealing Search Warrant Documents…......16

        B.  The District Court Failed to State Sufficient Reasons to Support Sealing *<u>Each</u>* of the Search Warrant Documents in their Entirety……………………………………………………….…...18

III.   SECOND ISSUE PRESENTED FOR REVIEW:  The District Court Erred by Indefinitely Sealing the Search Warrant Documents…..………………22

IV.  THIRD ISSUE PRESENTED FOR REVIEW:  The District Court Erred by Sealing the Docket Sheet Where There Is No Evidence that the Docket Sheet on Its Face Contains Information that Must Be Kept Secret…….…………........................................................................................25

    A.  The District Court Erroneously Concluded that the Newspapers Did Not Request Access to the Docket Sheet……....…………………………25

    B.  After the Execution of a Search Warrant, the Docket Sheet Should Be Publicly Available…………………………………………………….26

V.  FOURTH ISSUE PRESENTED FOR REVIEW:  The District Court Erred by Not Determining that the Public Has A First Amendment Right of Access to Pre-Indictment Search Warrant Documents While the Investigation is Ongoing.……..…………………………………….............…………..33

    A. The Eighth Circuit's Decision in *Secretarial Area* Supports Unsealing Search Warrant Documents...…………..……………………………34

    B.  Contrary Conclusions in the Fourth and Ninth Circuits Should Have No Impact on this Court's Decision….…..………………………………35

    C.  This Circuit Should Recognize a Qualified First Amendment Right of Access to Post-Execution, Pre-Indictment Search Warrant Materials, Even When the Investigation is Ongoing…..…………………………...37

CONCLUSION…………………………………………………...…………….39

CERTIFICATE OF COMPLIANCE ……………………………………...….…40

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS………..41

CERTIFICATE OF SERVICE …………………………………………………...42

# TABLE OF AUTHORITIES

**Cases**

1. *Baltimore Sun Co. v. Goetz,*
   886 F.2d 60 (4th Cir. 1989)………………..13, 16, 17, 19, 21, 26, 29, 34, 35, 37

2. *Franks v. Delaware*, 438 U.S. 154 (1978)……..………………………………36

3. *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83 (2d Cir. 2004)…......12, 31, 39

4. *In re Application of New Times Co. for Access to Certain Sealed Court Records*, 585 F.Supp.2d 83 (D.D.C. 2008)………………………….....34, 38

5. *In re Knight Publishing Co.*, 743 F.2d 231 (4th Cir. 1984)…………………..17

6. *In re Providence Journal Co. Inc.*, 293 F.3d 1 (1st Cir. 2002)……………….15

7. *In re Search of EyeCare Physicians of America*,
   910 F.Supp. 414 (N.D.Ill.1996)…………….……………….......21, 22, 23, 28

8. *In re Search Warrant for Four Contiguous Parcels of Real Property in Milford, Michigan*, No. 06-x-50457, 2006 WL 1779436
   (E.D.Mich. June 26, 2006)…………..……………………..……………….36

9. *In re Search Warrant for Secretarial Area Outside Office of Gunn*,
   855 F.2d 569 (8th Cir. 1988)………………………..12, 27, 29, 31, 34, 35, 38

10. *In re Searches of Semtex Indus., Corp.*, 876 F.Supp. 426 (E.D.N.Y. 1995)….23

11. *In re State-Record Co., Inc.*, 917 F.2d 124 (4th Cir. 1990)…………………..15

12. *In re Washington Post Co.*, 807 F.2d 383 (4th Cir. 1986)……………………16

13. *In re the Search of Fair Finance, Fair Financial, Obsidian Enterprises, & Timothy S. Durham*, S.D. Ind. No. 1:10-mc-00008-SEB-TAB..........................9

14. *Media General Operations, Inc. v. Buchanan*,
    417 F.3d 424 (4th Cir. 2005)…..……….........................16, 17, 21, 26, 29, 32

15. *Nixon v. Warner Communications,* 435 U.S. 589 (1978)…...……………14, 37

16. *Press-Enterprise Co. v. Superior Court*,
    464 U.S. 501 (1984)………..……………………………...15, 16, 31, 36, 38

17. *Press-Enterprise Co. v. Superior Court,*
    478 U.S. 1 (1986)…………….………………………..…15, 16, 19, 33, 37, 38

18. *Richmond Newspapers v. Virginia*, 448 U.S. 555 (1980)...……………...14, 38

19. *Rushford v. New Yorker Magazine,* 846 F.2d 249 (4th Cir. 1988)……...……16

20. *Stone v. University of Md. Med. Sys. Corp.,*
    855 F.2d 178 (4th Cir. 1988)……………..………………………11, 17, 19

21. *Times Mirror Co. v. U.S.,* 873 F.2d 1210 (9th Cir. 1989) ...……..15, 34, 36, 37

22. *U.S. v. Beckham*, 789 F.2d 401 (6th Cir. 1986)……………..………………14

23. *U.S. v. Brooklier,* 685 F.2d 1162 (9th Cir. 1982)………………….....20, 21

24. *U.S. v. Certain Real Property Located in Romulus, Wayne Cty., Michigan*,
    977 F.Supp. 833 (E.D.Mich. 1997)……………..……………………33, 36

25. *U.S. v. Criden,* 648 F.2d 814 (3d Cir. 1981)…..………………………..13

26. *U. S. v. Criden,* 675 F.2d 550 (3d Cir. 1982)……......……..……..20, 21, 27

27. *U.S. v. East Side Ophthalmology*, Nos. 95 MAG. 2424, 2425, and 2431,
    1996 WL 384891 (S.D.N.Y. July 9, 1996)………..……………………23

28. *U.S. v. Leon*, 468 U.S. 897 …………..…………………………………38

29. *U.S. v. Miami University*, 294 F.3d 797 (6th Cir. 2002)…………..……….....14

30. *U.S. v. Peterson*, 627 F.Supp.2d 1359 (M.D.Ga.2008)…………….....…….23

31. *U.S. v. Real Property in Hamilton County, Indiana, at 14353 East 113th Street, Fortville, et al.*, S.D. Ind. No. 1:09-cv-01460-SEB-DML...…….8, 9, 29

32. *U.S. v. Slough*, 677 F.Supp.2d 296 (D.D.C. 2010)……………………………23

33. *U.S. v. Smith,* 787 F.2d 111 (3d Cir. 1986)…..………………………….…13

34. *Virginia Dep't of State Police v. The Washington Post*, 386 F.3d 567 (4th Cir. 2004)……………………………………………14, 17

## Statutes

28 U.S.C. § 1291……………………...…………………………………………1

28 U.S.C. § 1331……………………………..………………………………1

## Other Authorities

Guide to Judiciary Policies and Procedures, Vol. IV, Chapter 3, §3.01.d………..27

Guide to Judiciary Policies and Procedures, Vol. IV, Chapter 3, §3.01.f………..28

## Rules

Fed. R. Crim. P. 41(i)…………………………………………………………32, 37

Fed. R. Crim. P. 55………………………………………………………..27

# STATEMENT IN SUPPORT OF ORAL ARGUMENT

Pursuant to Federal Rule of Appellate Procedure 34(a)(l) and Sixth Circuit Rule 34(a), Appellants The Akron Beacon Journal and the Indianapolis Business Journal (the "Newspapers") request oral argument. Oral argument will assist the Court in reaching a full understanding of the issues and allow the attorneys for the parties to address any outstanding factual or legal issues that the Court deems relevant. This case also involves an issue of first impression in the Sixth Circuit. Under such circumstances, oral argument is appropriate.

# JURISDICTIONAL STATEMENT

On January 4, 2010, Appellants the Akron Beacon Journal and the Indianapolis Business Journal, among other newspapers, filed their Amended Motion to Unseal Search Warrant Documents in a miscellaneous action in the United States District Court for the Northern District of Ohio, Eastern Division, through which they sought access to certain sealed search warrant documents and the docket sheet in accordance with their constitutional and common law rights. [District Court Electronic Docket ("Record Entry") No. 4, Amended Motion to Unseal, filed 1/4/2010]. On August 10, 2010, after briefing, the district court denied this motion, thereby disposing of all matters before it. [Record Entry Nos. 37 and 38, Memorandum Opinion and Order and Judgment Entry, decided 8/10/2010]. The Newspapers timely appealed the final order on September 9, 2010. [Record Entry No. 42, Notice of Appeal, filed 9/9/2010].

The district court had jurisdiction over this matter under 28 U.S.C. § 1331. This Court has appellate jurisdiction based on 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1.      Did the district court err by denying the Newspapers' amended motion to unseal search warrant documents without findings on the record specific enough to allow this Court to determine, with respect to each sealed document, that: (a) the document contains information which the government has a compelling interest in withholding, (b) the government's interests in sealing the document heavily outweigh the public's interests in access, and (c) the document cannot be redacted?

2.      Did the district court err by indefinitely sealing the search warrant documents, to wit: the application for the search warrant, affidavit in support of the search warrant, search warrant, return, inventory, motion to seal all the search warrant documents, order granting the sealing of all the search warrant documents, and all other related documents?

3.      Did the district court err by sealing the docket sheet where there is no evidence that the docket on its face contains information that must be kept secret to protect a compelling governmental interest and cannot be redacted?

4.      Did the district court err by not determining that the public has a qualified First Amendment right of access to post-execution, pre-indictment search warrant materials?

## STATEMENT OF THE CASE

This case involves public access to documents related to the November 24, 2009, searches of Fair Finance, Fair Financial, Obsidian Enterprises, and/or home or office of Timothy S. Durham (collectively, "Fair Finance"). Mr. Durham is suspected of engaging in a Ponzi scheme among other malfeasance through Fair Finance, an investment company holding more than $200 million obtained from about 5,300 investors. [Record Entry No. 4, Amended Motion to Unseal, filed 1/4/2010, at pp. 1-5]. Unknown to the public, Appellee the United States of America (the "government") successfully obtained the sealing of all the search warrant documents at issue, as well as the court docket sheet and the magistrate's order permitting them to be filed under seal. [Id.]

In connection with their reporting on the Fair Finance story, Appellants The Akron Beacon Journal and the Indianapolis Business Journal (collectively, the "Newspapers"), among other newspapers, moved the District Court for the Northern District of Ohio, Eastern Division, for an order "unsealing Affidavits, Search Warrants and any other documents (collectively, "Search Warrant Documents") executed under seal pertaining to the search of [Fair Finance]." [Id.

at p. 4].  In this amended motion, the Newspapers asserted their First Amendment and common law rights of access to the Search Warrant Documents.[1]  [Id.]

The government filed a response opposing the unsealing and sought to file the declaration of FBI Special Agent Dennis Halliden ("Halliden Declaration") as an *ex parte* document for *in camera* review by the district court, ostensibly to explain, albeit belatedly, why the government had a legitimate interest in sealing the Search Warrant Documents. [Record Entry No. 11, Government's Memorandum in Opposition to Amended Motion to Unseal Search Warrant Documents, filed 1/21/2010; Record Entry No. 14, Motion for Leave to Re-File Declaration, filed 1/22/2010].  Over the Newspapers' objections, the district court allowed the government to make its case for sealing the Search Warrant Documents *with more sealed records*, namely the Halliden Declaration.[2]  [Record

---

[1]     The term "Search Warrant Documents," as used before the district court and herein, includes the application for the search warrant, affidavit in support of the search warrant, search warrant, return, inventory, motion to seal all the search warrant documents, order granting the sealing of all the search warrant documents, and all other related documents.  Because the docket sheet itself is under seal, the Newspapers have no way of knowing the exact documents submitted in connection with the search of Fair Finance.

[2]     Even though the district court considered the Halliden Declaration, *the declaration was not docketed* until after the district court issued its decision and the Newspapers filed a Motion to Supplement the Docket in anticipation of this appeal. [Record Entry No. 39, Motion to Supplement Docket, filed 8/13/2010].

Entry Nos. 15, 28, 30, 31, 32].[3]  Thereafter, the Newspapers filed a reply brief in

further support of their amended motion to unseal.  [Record Entry No. 35, Reply to

Government's Memorandum in Opposition to Amended Motion to Unseal Search

Warrant Documents, filed 4/26/2010].

On August 10, 2010, after reviewing *in camera* the documents placed under

seal,[4] the district court denied the Newspapers' amended motion to unseal the

Search Warrant Documents.  [Record Entry No. 37, Memorandum Opinion and

Order, and No. 38, Judgment Entry, decided 8/10/2010].  In its opinion, the district

court did not identify the specific documents at issue and did not explain the

general contents of each.  Nevertheless, regarding the common law right of access,

the district court held that the government's interests in the ongoing investigation

outweighed any common law right of access which the Newspapers possessed.

[Record Entry No. 37, at p. 6].

---

[3]  The additional pleadings that comprise the briefing on the Halliden Declaration are as follows:  Record Entry No. 15, Opposition to Motion for Leave to Re-file, filed 1/26/2010; Record Entry No. 28, Interim Report & Recommendation, decided 3/9/2010; Record Entry No. 30, Objection to Report & Recommendation, filed 3/19/2010; Record Entry No. 31, Response to Objection to Report & Recommendation, filed 3/30/2010; and Record Entry No. 32, Order, decided 4/12/2010.

[4]  The Newspapers did not object to the district court obtaining the actual documents placed under seal from the clerk in order to conduct an *in camera* review of them.  [Record Entry No. 36, Order, filed 7/6/2010].  The government has agreed to submit those records under seal to this Court for similar review.

Regarding the First Amendment right to access,[5] the district court similarly concluded that "the government's interest in maintaining the confidentiality of its ongoing investigation [was] compelling…." [Id. at pp. 7-8]. Further, in the district court's view, redaction of the documents would be "impractical," because "[a] redacted version would involve a large portion of the documents." [Id. at p. 8]. Finally, the district court refused to consider making the docket sheet public, erroneously finding that the Newspapers had not requested such relief when in fact they had. [Id. at p. 9, fn. 9]. The Newspapers have timely appealed this judgment.

## STATEMENT OF THE FACTS

The facts are not in dispute: On or about November 24, 2009, the government executed search warrants in Ohio and Indiana for the offices of Fair Finance, Fair Financial and Obsidian Enterprises, and perhaps for the home of Timothy S. Durham, the owner of those companies. The searches effectively closed down the business operation of Fair Finance, leaving thousands of investors without access to more than $200 million worth of investments. These investors read and rely upon newspapers for their information, and dozens contacted the local media for assistance in determining how to locate and recover their investments. [Record Entry No. 4, Amended Motion to Unseal, filed 1/4/2010].

---

[5] As discussed *infra*, although unclear from the opinion, the district court also may have held that there is no First Amendment right of access to search warrant proceedings. [Record Entry No. 37, Memorandum Opinion and Order, at p. 7].

The closure also generated immense public interest due to the large number of people and large sums of money involved.[6]  It resulted in hundreds of news stories being reported by The Akron Beacon Journal, the Indianapolis Business Journal, the Indianapolis Star, The Wall Street Journal and other publications nationally, both online and in print.  [Record Entry No. 4, Attachments 1 through 8].

The Newspapers' reporting initially was stymied by their inability to discover even the location of the Search Warrant Documents.  The media searched the public access website of the federal court system (PACER) for some indication of a case pertaining to Fair Finance but found only a peripherally related forfeiture action in the Southern District of Indiana, as will be discussed more fully below. [Record Entry No. 35, p. 6, fn. 2].  In addition, they called and visited the courthouse of the Northern District of Ohio to learn what they could about the searches.  A clerk for that court told one reporter that no records existed for Fair

---

[6]     Affidavits from the news media indicate that they had received enormous reader response to this story, in some cases more response than from any other story.  [Record Entry No. 4, Exhibits 5, 6, 7, and 8].

Finance – not even a docket.  [Record Entry No. 15-1, Affidavit of Ed Meyer].[7]

Moreover, the clerk's office declined to reveal the location of the Search Warrant

Documents.  Put simply, nothing was publicly accessible with respect to the

issuance or execution of the search warrants – not even a docket.

As a result, on December 17, 2010, the Newspapers[8] contemporaneously

filed motions to unseal the Search Warrant Documents with this court and in a

related forfeiture action commenced by the government in Indiana.[9]  [Record Entry

No. 1, Motion to Unseal Search Warrant Documents; *U.S. v. Real Property in*

---

[7]      Ed Meyer, a reporter for The Akron Beacon Journal, stated in his sworn affidavit:

> 4.      On or about Dec. 1, 2009, I called the clerk's office in the U.S. District Court in Akron and was told by a clerk named Stacy that there was no record of search warrants being issued or filed and no ability to find out if they were issued or filed or where. . . .
>
> 6.      I also made a personal visit to the U.S. District Courthouse in Akron in early December 2009 and once again was told by a clerk that there was no docketed record of anything associated with Fair Finance, and no record of a Motion to Seal, Order to Seal or any other records pertaining to Search Warrant Documents.

[Record Entry No. 15-1, Affidavit in Support of Opposition to Filing Additional Halliden Declaration Under Seal].

[8]      Appellant The Akron Beacon Journal and another newspaper filed the original motion to unseal the Search Warrant Documents.  Appellant the Indianapolis Business Journal joined the amended motion to unseal.

[9]      The government filed its Complaint of Forfeiture in Rem on November 24, 2009, but voluntarily dismissed the action less than two weeks later.  [Record Entry No. 37, p. 2, fn. 1].

*Hamilton County, Indiana, at 14353 East 113th Street, Fortville, et al.*, S.D. Ind. No. 1:09-cv-01460-SEB-DML]. The Newspapers filed motions to unseal in two different courts because they could not ascertain where the search warrants had been issued, even though the warrants had been executed and presumably returned more than three weeks earlier. Barely two weeks later, the United States District Court for the Southern District of Indiana denied the Newspapers' motion to unseal, stating "[t]he docket of this civil litigation discloses that no search warrants were ever issued in this cause." [Record Entry No. 35, p. 6, fn. 2 (*citing U.S. v. Real Property in Hamilton County, Indiana, at 14353 East 113th Street, Fortville, et al.*, S.D. Ind. No. 1:09-cv-01460-SEB-DML, Record Entry No. 12, decided 1/5/2010)].

Thereafter, additional newspapers joined the cause, resulting in the filing of the Amended Motion to Unseal at issue herein [Record Entry No. 4] as well as a new miscellaneous case in the Southern District of Indiana [*In re the Search of Fair Finance, Fair Financial, Obsidian Enterprises, & Timothy S. Durham*, S.D. Ind. No. 1:10-mc-00008-SEB-TAB]. [Record Entry No. 35, p. 6] The Newspapers found it necessary to pursue parallel miscellaneous cases in both jurisdictions because: (1) There was no public docket pertaining to the search of Fair Finance in either location; (2) Fair Finance offices were searched in both locations.

At a hearing on February 11, 2010, before a magistrate judge in the Northern District of Ohio, counsel for the government[10] told the court that the Search Warrant Documents located in Indiana were essentially the same as those in Ohio.[11] Because the litigation had progressed further in the Northern District of Ohio, and in order to avoid conflicting decisions between the jurisdictions, the Newspapers dismissed the Indiana action and proceeded solely in the Northern District of Ohio. [Record Entry No. 27, Notice of Dismissal of Action Filed in the United States District Court for the Southern District of Indiana, filed 2/16/2010]. As previously discussed, the district court herein denied the Newspapers' amended motion to unseal the Search Warrant Documents in violation of the Newspapers' common law and First Amendment rights of access.

## SUMMARY OF ARGUMENT

In this case, the entire search-warrant process—from the government's application for the search warrant to the filing of the inventory and return—was conducted under seal. There is not a single document accessible, in whole or part, to the public. Indeed, even the docket sheet relating to the search warrant remains under seal. As a consequence of this intensely secretive process, no real notice has

---

[10]    Winfield D. Ong, an Assistant United States Attorney.

[11]    The hearing took place on 2/11/2010. *See generally* ECF 2/11/2010 Minute Entry on the District Court's docket. For purposes of appeal, this fact is added as background only. The Newspapers did not order a transcript of the hearing.

been given to the public about the Search Warrant Documents or the process leading to their sealing. Only through the Newspapers' unflagging persistence did they discover the location of the Search Warrant Documents and commence proceedings to unseal them.

In denying the Newspapers' request for access, the district court erred by failing to articulate sufficient reasons to support its decision to seal each and every Search Warrant Document, as it was required to do under the standards applicable to access claims under the First Amendment and common law. The district court did not identify the specific documents at issue, nor did it explain the general contents of each document and why each needed to be sealed *in toto*. Experience and common sense cast doubt on the district court's sweeping determination that all Search Warrant Documents should be sealed and that redacting some or all of the Search Warrant Documents would be "impractical." [Record Entry No. 37, at p. 8]. Indeed, it would be highly unusual if "alternatives could not be used to preserve public access to at least a portion of the record." *Stone v. University of Md. Med. Sys. Corp.,* 855 F.2d 178, 182 (4th Cir. 1988). The district court compounded its error by decreeing the "[c]ase closed" and relinquishing jurisdiction over the matter, thereby improperly causing the entire record to be sealed indefinitely.

In addition, the district court incorrectly concluded that the Newspapers had not requested access to the docket sheet, despite the fact that their motion clearly requested "*any other documents*…executed under seal pertaining to the search of Fair Finance…." [Record Entry No. 4, at p. 1 (emphasis added.)]. Because the docket sheet is presumptively available to the public, it should be readily accessible to the Newspapers. The Second Circuit already has held that the press and the public possess a qualified First Amendment right of access to docket sheets. *See Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 96 (2d Cir. 2004). How the government could have met its burden of showing a compelling interest in sealing the docket is mystifying. However, it is a burden that must have been met in advance of the magistrate's placing the docket under seal.

Finally, the district court seems to have decided, erroneously, that the public does not possess a qualified First Amendment right of access to post-execution, pre-indictment search warrant materials. While this Circuit has not yet decided this issue and other circuits are split on it, the well-reasoned opinion of the Eighth Circuit in *In re Search Warrant for Secretarial Area Outside Office of Gunn,* 855 F.2d 569 (8th Cir. 1988), compels the recognition of such a right.

Ultimately, sealing the entire record runs counter to the history and tradition in the United States of openness in the criminal justice system and erodes public

confidence therein.  For the reasons more fully discussed below, the district court's judgment should be reversed.

## ARGUMENT

### I.      STANDARDS OF REVIEW

#### A.      Common Law Right of Access

As conceded by the government,[12] and recognized by the district court in its opinion,[13] judicial documents, such as search warrant documents, are subject to a strong common law presumption of openness.  *Baltimore Sun Co. v. Goetz,* 886 F.2d 60, 64 (4th Cir. 1989) (holding that there is a common-law qualified right of access to warrant papers which is committed to the sound discretion of the judicial officer who issued the warrant); *see also*, *U.S. v. Criden,* 648 F.2d 814, 823 (3d Cir. 1981)(*"Criden I"*) (permitting television networks to copy, for the purpose of broadcasting to the public, tapes admitted into evidence during a criminal trial on the basis of the strong common-law presumption of access); *U.S. v. Smith,* 787 F.2d 111, 116 (3d Cir. 1986) (finding the common-law right of access to judicial

---

[12]      *See* Record Entry No. 11, Memorandum in Opposition to Amended Motion to Unseal Search Warrant Documents, at p. 12 (stating that "[t]he government concedes that the search warrant materials at issue here are judicial documents, and that there is a common-law presumption of access to those documents") and at pp. 11-12 ("The party seeking to overcome the presumption bears the burden of showing some significant interest that outweighs the presumption.  The court must balance the government's interest in confidentiality and privacy against the public's interest in inspection.").

[13]      *See* Record Entry No. 37, at p. 4.

records applicable to transcripts of sidebar or in-chambers conferences at which evidentiary or other substantive rulings had been made). This common law presumption of access to judicial records can be overcome only when "countervailing interests heavily outweigh the public interests in access[.]" *Virginia Dep't of State Police v. The Washington Post*, 386 F.3d 567, 575 (4th Cir. 2004), *cert. denied*, 544 U.S. 949 (2005).

A judicial officer's decision to seal court records based upon this common law right is subject to review under an abuse of discretion standard. *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 599 (1978); *U.S. v. Beckham*, 789 F.2d 401, 403 (6th Cir. 1986). "A district court abuses its discretion when it relies on clearly erroneous findings of fact or when it improperly applies the law." *U.S. v. Miami University*, 294 F.3d 797, 806 (6th Cir. 2002) (internal quotation marks and citation omitted).

**B.      First Amendment Right of Access**

The United States Supreme Court has recognized a First Amendment right of access to criminal trials, proceedings, and records. *Richmond Newspapers v. Virginia*, 448 U.S. 555, 580 (1980) (stating that "the right to attend criminal trials is implicit in the guarantees of the First Amendment"). This qualified First Amendment right of access attaches where: (1) The information sought has "historically been open to the press and general public"; and (2) "Public access

plays a significant positive role in the functioning of the particular process in question[.]" *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 8 (1986) (citations omitted) ("*Press-Enterprise II*").

Once the qualified First Amendment right of access attaches, it can "be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 510 (1984) ("*Press-Enterprise I*"). The burden to overcome a First Amendment right of access rests on the party seeking to restrict access, and that party must present specific reasons in support of its position. *Press-Enterprise II,* 478 U.S. at 15 ("The First Amendment right of access cannot be overcome by [a] conclusory assertion….").

Where the right of access is granted by the First Amendment, a district court's decision to seal documents is reviewed *de novo* and must be narrowly tailored to serve a compelling governmental interest. *Times Mirror Co. v. U.S.*, 873 F.2d 1210, 1211-12 (9th Cir. 1989); *In re Providence Journal Co. Inc.*, 293 F.3d 1, 10 (1st Cir. 2002) (stating that constitutional access claims engender *de novo* review); *In re State-Record Co., Inc.*, 917 F.2d 124, 127 (4th Cir. 1990) ("Under the common law the trial court's denial of access to documents is reviewed for abuse of discretion, but under the First Amendment, such denial is

reviewed *de novo* and must be necessitated by a compelling government interest that is narrowly tailored to serve that interest.").

II.   **FIRST ISSUE PRESENTED FOR REVIEW:   The District Court Erred by Denying the Newspapers' Amended Motion to Unseal Search Warrant Documents Where It Failed to Make Findings and Conclusions Specific Enough to Allow this Court to Determine that Each Document Should Be Sealed.**

A.   **Procedural Requirements for Sealing Search Warrant Documents.**

When presented with a request to seal judicial records or documents, a district court must comply with certain procedural requirements. *Rushford v. New Yorker Magazine,* 846 F.2d 249, 253 (4th Cir. 1988). These requirements apply to access claims under both the First Amendment and common law. *In re Washington Post Co.*, 807 F.2d 383, 390 (4th Cir. 1986). Specifically, "[t]he decision to seal documents must be made after independent review by a judicial officer, and supported by 'findings and conclusions specific enough for appellate review.'" *Media General Operations, Inc. v. Buchanan*, 417 F.3d 424, 429 (4th Cir. 2005) (*quoting Goetz*, 886 F.2d at 65-66); *see also, Press-Enterprise II*, 478 U.S. at 13-14.

These findings and conclusions should explain how the government met its burden of overcoming the strong presumption in favor of public access. *See Press-Enterprise I*, 464 U.S. at 510 (holding, regarding the First Amendment right of

access, that the district court must determine that the government established a compelling interest in sealing, which is narrowly tailored to serve that interest); *Virginia Dep't of State Police*, 386 F.3d at 575 (holding, regarding the common law right of access, that the district court must determine that the government's "countervailing interests heavily outweigh the public interests in access") (quotation omitted).

"If a judicial officer determines that full public access is not appropriate, she 'must consider alternatives to sealing the documents' which may include giving the public access to some of the documents or releasing a redacted version of the documents that are the subject of the government's motion to seal." *Media General Operations, Inc.*, 417 F.3d at 429 (*quoting Goetz*, 886 F.2d at 66). "[I]t would be an unusual case in which alternatives could not be used to preserve public access to at least a portion of the record." *Stone,* 855 F.2d at 182. Further, as with its initial determination on full access, the district court must state the reasons and specific supporting findings for rejecting less drastic alternatives to sealing, in order to provide an adequate record for review. *Id*. at 181; *see also*, *In re Knight Publishing Co*., 743 F.2d 231, 234 (4th Cir. 1984). Adherence to these procedures serves to "ensure that the decision to seal records will not be made lightly, and make possible meaningful [appellate] review of a decision to seal." *Stone*, 855 F.2d at 182.

**B.      The District Court Failed to State Sufficient Reasons to Support Sealing _Each_ of the Search Warrant Documents in their Entirety.**

In this case, the district court failed to make the findings necessary to seal each of the Search Warrant Documents.  Instead of addressing the documents individually, the district court lumped them together and concluded:

> In view of the fact that the government's investigation is ongoing, unsealing the relevant records, especially the detailed affidavit in support of the search warrant (all of which this Court has inspected _in camera_) would reveal a virtual "road map" of the government's investigation, investigative techniques and the information derived therefrom, the identities of sources and potential targets of the investigation, and an impression (possibly mistaken) concerning who may or may not be cooperating with the government.

[Record Entry No. 37, at p. 6].  The district court applied this basic rationale to deny access under both the common law and First Amendment.  [Id. at pp. 6 and 8].

The district court, however, did not identify the specific documents filed in connection with the search of Fair Finance.  In fact to this day the Newspapers do not know exactly what documents the government submitted in connection with the search, as there is no court docket available. Nor did the district court explain the general contents of each document and why each document needed to be sealed under the standards set forth above.

While the "detailed affidavit" — the only Search Warrant Document specifically referenced in the district court's opinion — may (or may not) contain

information warranting its sealing under the district court's rationale, it is difficult to imagine that the other sealed documents (including the warrant, application, return, inventory, motion to seal, and order sealing the documents) *each* contain "a virtual 'road map' of the government's investigation, investigative techniques and the information derived therefrom, the identities of sources and potential targets of the investigation, and an impression concerning who may or may not be cooperating with the government." [Id.]. Indeed, only warrant affidavits typically have that degree of specificity.

Experience and common sense, therefore, cast doubt on the district court's blanket determination that all Search Warrant Documents should be sealed and that redacting some or all of the Search Warrant Documents would be "impractical." [Record Entry No. 37, at p. 8]. As previously discussed, the right of access may be restricted *only* if the restriction is narrowly tailored. *Press-Enterprise II*, 478 U.S. at 15 (addressing the First Amendment right of access). "[T]he judicial officer must consider alternatives to sealing the documents," including "disclosing some of the documents or giving access to a redacted version." *Goetz,* 886 F.2d at 65-66 (addressing the common law right of access). Further, as previously noted, it would be highly unusual if "alternatives could not be used to preserve public access to at least a portion of the record." *Stone,* 855 F.2d at 182.

While the Newspapers are not privy either to the documents or to a general description of the contents thereof, the record suggests that the district court did not meaningfully consider alternatives to sealing – such as redacting specific, highly sensitive information from some or all of the documents and releasing the remainder. The district court did not even attempt to articulate why each of the Search Warrant Documents could not be released, even in redacted form. The district court's conclusory assertion that redaction would be "impractical" cannot support the wholesale sealing of each of the records in this case.

"The articulation requirement is essential for meaningful appellate review…." *U.S. v. Criden,* 675 F.2d 550, 562 (3d Cir. 1982) (*"Criden II"*). "Since the purpose of the findings is to enable the appellate court to determine whether the closure order was properly entered, the findings must be sufficiently specific to show that the three substantive prerequisites to closure have been satisfied – that there is a substantial probability (1) that public proceedings would result in irreparable damage . . . ; (2) that no alternative to closure would adequately protect this right, and (3) that closure would effectively protect it. The court's findings did not meet this test." *U.S. v. Brooklier,* 685 F.2d 1162, 1168-69 (9th Cir. 1982). "General statements that the court concludes closure is necessary. . . [do] not afford a basis for determining whether the court applied the correct standard in weighing possible prejudice from open proceedings or whether the court's

conclusion was supported by the record. . . . We are also unable to determine whether the court found no available alternative to closure. . . . Such findings are required." *Id.* at 1167 (*citing Criden II*).

Moreover, the cases cited by the district court do not support its decision. Those cases do not involve the wholesale sealing of entire search warrant files; rather, in those cases, only the applications and/or affidavits in support of the search warrants were sealed. *See, e.g., Media General Operations, Inc.*, 417 F.3d at 427 (noting, in a case concerning ongoing investigations into the September 11, 2001, terrorist attacks, that "[w]ith the exception of the search warrant affidavits, all other pleadings and documents, including the returns and the motions to seal, are not implicated by the…sealing order and should have been available to the public upon request"); *see In re Search of EyeCare Physicians of America*, 910 F.Supp. 414 (N.D.Ill.1996) (noting that the government only sought the sealing of the application and affidavit in support of the warrant and that the government provided the party seeking access with all of the documents seized pursuant to the warrant); *see also*, *Goetz*, 886 F.2d at 66 (stating that the magistrate observed the requirement of considering alternatives to sealing by not sealing the warrant, return, and inventory). Here, the district court improperly denied access to the entire search warrant file, including the docket sheet itself.

Accordingly, regardless of whether the Newspapers' right of access is based on the common law or the First Amendment, the district court was required to articulate sufficient findings on the record for sealing each Search Warrant Document and for rejecting less drastic alternatives. Here, the district court's opinion fails to show through such findings that the government met its burden of establishing entitlement to the sealing of each and every Search Warrant Document in its entirety. Specifically, regarding the First Amendment right, the government has not established a compelling interest in sealing all of the documents in their totality. Regarding the common law right of access, the government likewise has not shown that countervailing interests heavily outweigh the public's interests in access, especially given the facts of this case, where more than 5,300 investors awoke last Thanksgiving to find that the government had shut down the company where they had invested collectively more than $200 million. Therefore, the district court's decision to deny the Newspapers' amended motion to unseal the Search Warrant Documents should be reversed.

III. **SECOND ISSUE PRESENTED FOR REVIEW**: **The District Court Erred by Indefinitely Sealing the Search Warrant Documents.**

Federal courts have recognized that indefinitely sealing judicial records is improper. *See EyeCare*, 910 F.Supp. at 417 (stating, in connection with the sealing of search warrant documents, that "[t]he extraordinary step of sealing judicial

records…cannot last forever"); *see also, U.S. v. Peterson*, 627 F.Supp.2d 1359, 1374-75 (M.D.Ga.2008) (stating that "judicial documents [including search warrant documents] should not be sealed indefinitely" and "should only remain[] sealed when some interest would be adversely affected if the documents were made public"); *U.S. v. East Side Ophthalmology*, Nos. 95 MAG. 2424, 2425, and 2431, 1996 WL 384891, at *2 (S.D.N.Y. July 9, 1996) ("The case law in this circuit indicates that search warrants and supporting documentation may not be sealed indefinitely.").

To prevent indefinitely sealing records, courts typically: (1) order the documents unsealed on a particular date but give the government the opportunity to show why they should not be unsealed on that date; (2) set a date for revisiting whether the documents should remained sealed; or, (3) maintain jurisdiction over the matter to permit a renewed motion for unsealing in the future. *See, e.g., In re Searches of Semtex Indus., Corp.*, 876 F.Supp. 426, 432 (E.D.N.Y. 1995) (ordering documents unsealed as of a particular date); *U.S. v. Slough*, 677 F.Supp.2d 296, 300 (D.D.C. 2010) (ordering the clerk to "unseal all materials relating to the *Kastigar* hearing on February 2, 2010"); *East Side Ophthalmology*, 1996 WL 384891, at *3 (retaining jurisdiction and ordering that "[t]he denial of this motion [to unseal was] without prejudice to its renewal in the future."); *Eyecare*, 910 F.Supp. at 417 (retaining jurisdiction over the matter and ordering documents to

remain under seal "until the Magistrate Judge unseals the original affidavit or until further order of this court").

In the present case, the district court denied the Newspapers' amended motion to unseal search warrant documents and decreed the "[c]ase closed." [Record Entry No. 38, Judgment Entry].   In doing so, it set neither a deadline for disclosure nor a deadline for revisiting whether the government could still meet its burden of demonstrating a compelling interest in sealing the Search Warrant Documents which exceeds the public's interest in access.   The district court likewise appears to have relinquished jurisdiction over the matter by closing the case.   As a result, the district court's order has improperly provided for the indefinite sealing of the Search Warrant Documents.   Accordingly, in the event that this Court does not reverse the denial of the Newspapers' amended motion to unseal in its entirety, it should order the district court either to set a deadline for unsealing or to maintain the case on its docket to permit a renewed motion for unsealing.

**IV.** **THIRD ISSUE PRESENTED FOR REVIEW:** **The District Court Erred by Sealing the Docket Sheet Where There Is No Evidence that the Docket Sheet on Its Face Contains Information that Must Be Kept Secret.**

    **A.** **The District Court Erroneously Concluded that the Newspapers Did Not Request Access to the Docket Sheet.**

In its opinion, the district court indicated that it had "not considered any other type of relief, such as making the docket public, because no other form of relief was requested in the motion itself and, therefore, was not properly before the Court or fully briefed by the parties." [Record Entry No. 37, p. 9, fn. 9]. The district court erred by so concluding. The record unquestionably demonstrates that the Newspapers requested access to the docket sheet and that the government understood this request.

Specifically, in their amended motion, the Newspapers sought "an Order unsealing Affidavits, Search Warrants and *any other documents*…executed under seal pertaining to the search of Fair Finance…." [Record Entry No. 4, at p. 1 (emphasis added.)]. The Newspapers intended "any other documents" to be just that: any other documents executed under seal pertaining to the search of Fair Finance. Those "other documents" obviously would include the docket sheet, if one does indeed exist and had been placed under seal by the magistrate judge. Moreover, the Newspapers had no reason to ask for the docket sheet specifically

because the Clerk of Court at the Northern District of Ohio told the Newspapers that no docket existed. [Record Entry No. 15-1, Affidavit of Ed Meyer].

Further, the government's briefing below shows that it clearly understood that the Newspapers sought access to the docket sheet. In its opposition memorandum, the government stated that "[t]he newspapers' actual bone of contention is that the sealed search warrant documents are not reflected on a docket available to be viewed by the public." [Record Entry No. 11, Government's Memorandum in Opposition to Amended Motion to Unseal Search Warrant Documents, p. 18]. For the foregoing reasons, the district court erred by concluding that the issue of access to the docket sheet was not properly before it.

## B. After the Execution of a Search Warrant, the Docket Sheet Should Be Publicly Available.

It is improper to seal the entire docket because the docket serves the important function of providing notice to the public and the press about the existence of executed search warrants and the fact that documents have been filed under seal. To that end, courts have recognized that the docketing of the order sealing search warrant documents is necessary to provide the press and public with the requisite notice and opportunity to present objections. *See Media General Operations, Inc.*, 417 F.3d at 430 (*citing Goetz*, 886 F.2d at 65) (holding that the district court must afford the public adequate notice of the sealing of search warrant documents by entering the order sealing them on the docket, thereby

giving the public and press an opportunity to object); *Secretarial Area,* 855 F.2d at 575 (holding that sealing of docket sheets was improper and stating that "[t]he fact that a closure or sealing order has been entered must itself be noted on the court's docket" in order to provide notice to the public and the press to afford them an opportunity to present objections); *see generally, Criden II*, 675 F.2d at 559 ("The case dockets maintained by the clerk of the district court are public records.").

Indeed, the Federal Rules of Criminal Procedure contemplate making the docket accessible to the public. Rule 55 of the Federal Rules of Criminal Procedure governs records in criminal cases and states:

> The clerk of the district court must keep records of criminal proceedings in the form prescribed by the Director of the Administrative Office of the United States courts. The clerk must enter in the records every court order or judgment and the date of entry.

The *Guide to Judiciary Policies and Procedures,* Vol. IV, Chapter 3, § 3.01, Search Warrants, addresses the types of records required by the Administrative Office with relation to search warrants. It provides:

### 3.01. Search Warrants

* * *

### d. Maintaining a Retrieval System

> When the search warrant is returned, a magistrate judge docket sheet or a miscellaneous docket should be opened using the magistrate judge case number or miscellaneous case number. . . . The search warrant and any other documents are removed from the vault or

secure area and placed in a case file with the magistrate judge case number or miscellaneous number on the front of the folder. The case file folder is then placed with the other criminal case files or in a separate part of the file area for magistrate judge cases, or in the miscellaneous files.

If the search warrant is ordered to be sealed, the procedures in § 3.01.f below of this manual should be followed.

* * *

**f. Returned Sealed Search Warrants**

Records can be sealed only by order of the court or by special provision (*e.g.* Federal Rules of Criminal Procedure 6 for grand jury matters). If the search warrant is sealed, it should be sealed in an envelope. . . . The sealed folder should have some identification on it (*e.g.* a magistrate judge case number or a miscellaneous number from a sequential list of numbers used for sealed material). *A listing or index of sealed materials, using the minimum amount of information required to locate the material, should be provided.* (Emphasis added.)

Thus, the *Guide to Judiciary Policies and Procedures* provides for the creation and maintenance of a case file containing search warrant documents by the clerk and, in the case of sealed materials, the preparation of an index cataloging the existence of those materials.

As is evident, federal courts have adopted procedures whereby search warrant documents are returned, docketed, and maintained in files by the clerk, which are available to the public. *Eyecare,* 910 F. Supp. at 421 ("[W]here a motion to seal the affidavit is made and granted, the warrant, the motion to seal, the order to seal, the return and the inventory, are presumptively available to the

public…and must be placed in the court file."). A docket sheet accessible to the public serves the important function of giving notice of any sealing to the public and press, giving them an opportunity to contest it. *See Media General Operations, Inc.*, 417 F.3d at 430; *see also Secretarial Area,* 855 F.2d at 575. At the very minimum, there must be a public record of the *fact* that documents have been filed under seal, even if the documents themselves are inaccessible to the public. *See, e.g., Goetz,* 886 F.2d at 65 (holding that "[c]oncealing warrant papers after the warrant has been executed [is] error" and that, "[i]f the content of the papers should not be disclosed, they should be placed under seal and docketed.").

In this case, after investors learned of the closure of Fair Finance and turned to the Newspapers for help, the Newspapers embarked on a wild goose chase of sorts in an attempt to locate the Search Warrant Documents. The Newspapers initially searched PACER for some indication of a case pertaining to Fair Finance, but they found none in the Northern District of Ohio.[14] [Record Entry No. 35, p. 6]. In addition, they called and visited the courthouse of the Northern District of

---

[14] They did locate the case referenced at page 8 herein in the Southern District of Indiana (*U.S. v. Real Property in Hamilton Cty., Indiana, at 14353 East 113th Street, Fortville, et al.,* S.D. Ind. No. 1:09-cv-01460-SEB-DML), where the Newspapers' initial Motion to Unseal Search Warrant Documents was dismissed because the "docket of this civil litigation discloses that no search warrants were ever issued in this cause," suggesting that the Newspapers would have been well-advised to rely on the docket in their search for the Search Warrant Documents.

Ohio, where a clerk told one reporter that no records existed for Fair Finance – not even a docket. [Record Entry No. 15-1, Affidavit of Ed Meyer].

The uncertainty occasioned by the lack of a publicly available docket led the Newspapers to commence actions in Ohio and Indiana—where the warrants had been executed. Nine months after the Newspapers first filed their lawsuit, the district court's opinion revealed that the warrant was returned and "placed under seal by order of the magistrate judge." [Record Entry No. 37, p. 3]. Until then, none of this information – including the sealing order – was known to the public. Consequently, other than making educated guesses, neither the Newspapers nor the public had any real notice of the sealing prior to the district court's opinion.

Furthermore, because the docket sheet is presumptively available to the public, it should be readily accessible unless the magistrate specifically placed it under seal with the other search warrant documents. To the extent that the magistrate's order did, in fact, place the docket under seal, it is difficult to comprehend how the government could have met its burden of showing that it has a compelling interest in keeping the docket secret or that its interests heavily outweigh the public interests in access, and that less drastic alternatives, such as redaction, were unavailable. This is especially true given that a docket sheet typically lists only the title of documents that have been filed, date of filing and name of counsel; otherwise, it generally contains no substantive information. *See*

*Hartford Courant Co.*, 380 F.3d at 86 (holding that "the press and the public possess a qualified First Amendment right of access to docket sheets."). *See Secretarial Area*, 855 F.2d at 575 (directing the district court to unseal the docket sheets with revealing references redacted, if necessary).

Ultimately, having a closed process runs counter to the general history and tradition of openness in the courts and criminal justice system. *See, generally*, *Press Enterprise I*, 464 U.S. at 508 (addressing *voir dire* examinations and observing that "[t]he value of openness lies in the fact that people not actually attending trials can have confidence that standards of fairness are being observed" and that "the sure knowledge that *anyone* is free to attend gives assurance that established procedures are being followed and that deviations will become known") (emphasis in original). Without access to the docket sheet and any of the Search Warrant Documents, it is impossible for the public or press to determine whether the magistrate judge, the district court, or the clerk complied with their duties under the law. *See Hartford Courant Co.*, 380 F.3d at 95 (observing that because a docket sheet provides a map of proceedings in the underlying case, its availability enhances the appearance of fairness essential to public confidence in the system).

For instance, there is no indication that the magistrate judge followed the correct procedural requirements for sealing the affidavit or any other of the Search

Warrant Documents *at the time she sealed them*. *See Media General Operations, Inc.*, 417 F.3d at 435 (Michael, C.J., concurring) (stating that the reasons for sealing and notice of the sealing constitute "procedures [that] must be followed *at the time of sealing*") (emphasis in original).[15] Nor can the Newspapers or the public discern whether all search warrant papers were returned to the clerk in compliance with Fed. R. Crim. P. 41(i).[16]

Based on the foregoing, the Newspapers respectfully request that this Court reverse the district court's decision denying them access to the docket sheet for the Search Warrant Documents.

---

[15] Indeed, it appears from the Magistrate's Interim Report and Recommendation [Record Entry No. 28] that the magistrate did not review the Halliden Declaration before allowing the government to file it under seal. And there is no evidence that the magistrate who issued the order allowing the initial Search Warrant Documents to be filed under seal reviewed them in advance of issuing the order.

[16] Fed. R. Crim. P. 41(i) provides:

Forwarding Papers to the Clerk: The federal magistrate to whom the warrant is returned must attach to the warrant a copy of the return, of the inventory and of all other related papers and must deliver them to the clerk in the district where the property was seized.

**V.    FOURTH ISSUE PRESENTED FOR REVIEW:    The District Court Erred by Not Determining that the Public Has A First Amendment Right of Access to Pre-Indictment Search Warrant Documents While the Investigation is Ongoing.**

While unclear from its opinion, the district court also may have held that there is no First Amendment right of access to post-execution, pre-indictment search warrant materials, such as the Search Warrant Documents.  Without much elaboration, the district court quoted a case from the Eastern District of Michigan for the proposition that "because there is no 'tradition of accessibility' for search warrant proceedings, there is no first amendment right of access to those proceedings."  [Record Entry No. 37, Memorandum Opinion and Order, at p. 7 (*quoting U.S. v. Certain Real Property Located in Romulus, Wayne Cty., Michigan*, 977 F.Supp. 833, 835 (E.D.Mich. 1997) ("*Romulus*")].  The district court, however, then proceeded to consider whether the government had a compelling interest in having the documents sealed—an unnecessary analysis in the absence of a First Amendment right.  [Record Entry No. 37, at p. 8].

This issue is a matter of first impression in this Circuit, and other circuits are split on this issue.  As already noted, a qualified First Amendment right of access attaches where: (1) the information sought has "historically been open to the press and general public"; and (2) "public access plays a significant positive role in the functioning of the particular process in question[.]"  *Press-Enterprise II*, 478 U.S. at 8.  Employing this analysis, the Eighth Circuit has held that search warrant

materials are afforded First Amendment protection, even when the investigation is ongoing. *Secretarial Area,* 855 F.2d at 575; *see also, In re Application of New Times Co. for Access to Certain Sealed Court Records*, 585 F.Supp.2d 83, 88 (D.D.C. 2008) (holding that there is a qualified First Amendment right of access to post-investigation warrant materials). The Fourth and Ninth Circuits, in contrast, have held that there is no qualified First Amendment right of access to warrant materials while an investigation is ongoing, but have not decided whether such a right of access attaches after the investigation has concluded or indictments have been returned. *Goetz*, 886 F.2d at 64; *Times Mirror Co.*, 873 F.2d at 1221. For the reasons that follow, this Court should determine that a First Amendment right of access exists.

**A.    The Eighth Circuit's Decision in *Secretarial Area* Supports Unsealing Search Warrant Documents.**

In *Secretarial Area*, a newspaper filed a motion to unseal search warrant affidavits and other materials related to the search of an employee of McDonnell Douglas Corp., which was under investigation for alleged fraud and bribery in the defense industry. *Secretarial Area,* 855 F.2d at 570-71. In addressing the first prong of the *Press-Enterprise II* test for deciding whether a First Amendment right of access exists, the Eighth Circuit stated:

> [A]lthough the process of issuing search warrants has traditionally not been conducted in an open fashion, search warrant applications and receipts are routinely filed with the clerk of court without seal. Under

the common law judicial records and documents have been historically considered to be open to inspection by the public.

*Id*. at 573. In finding the second prong to be likewise satisfied, the Eighth Circuit emphasized that "public access to documents filed in support of search warrants is important to the public's understanding of the function and operation of the judicial process and the criminal justice system and may operate as a curb on prosecutorial or judicial misconduct." *Id*. Finally, it observed that "even though a search warrant is not part of the criminal trial itself…, a search warrant is certainly an integral part of a criminal prosecution." *Id*. Based on this rationale, the Eighth Circuit concluded that a First Amendment qualified right of public access extends to search warrant materials. *Id*. at 570-75 and 476-77 (Heaney, J., concurring in part and dissenting in part).

**B. Contrary Conclusions in the Fourth and Ninth Circuits Should Have No Impact on this Court's Decision.**

The Fourth and Ninth Circuits have determined that there is no First Amendment protection for search warrant records. These circuits concluded that a First Amendment claim for access to search warrant materials failed the first prong of the *Press-Enterprise II* test because the search-warrant-application process was traditionally closed to the public. They also pointed to the fact that the process was historically conducted *ex parte* in order to prevent the subject of the search from being tipped off about the warrant and destroying evidence. *Goetz*, 886 F.2d at 64

(*citing Franks v. Delaware*, 438 U.S. 154, 169 (1978)); *Times Mirror Co*., 873 F.2d at 1214.

At least two judges for the Eastern District of Michigan have followed this line of cases, finding no First Amendment right. *See In re Search Warrant for Four Contiguous Parcels of Real Property in Milford, Michigan*, No. 06-x-50457, 2006 WL 1779436, at *3 (E.D.Mich. June 26, 2006); *Romulus*, 977 F.Supp. at 835-36. However, the rationale employed in these cases is faulty because it focuses on the circumstances as they exist *before* the execution of the warrants. As such, they fail to account for the fact that *after* the execution of search warrants, there is no longer any concern about tipping off the subject of the warrant and the consequent destruction of potential evidence.

This case is not about the search-warrant-*application* process, as there is no contention that the *application* process should be public or that records should be publicly accessible in advance of the execution of the search. The Newspapers contend merely that once a search is completed, the materials must be returned to the clerk and filed as required by the rules. Moreover, if the government can show that it has a compelling interest in sealing the documents, they may be withheld from the public and the press; after all, it is a qualified right. *Press-Enterprise I*, 464 U.S. at 510.

**C.    This Circuit Should Recognize a Qualified First Amendment Right of Access to Post-Execution, Pre-Indictment Search Warrant Materials, Even When the Investigation is Ongoing.**

As recognized in the Eighth Circuit, post-execution, pre-indictment search warrant materials have historically been available to the public.  Warrant applications and returns are routinely filed with clerk of court without seal after the warrants have been executed.  *See* Fed.R.Crim.P. 41(i) (warrant materials should be delivered to the clerk in the district where the property was seized); *Times Mirror Co.*, 873 F.2d at 1214 (stating that "most search warrant materials routinely become public"); *Goetz*, 886 F.2d at 64 ("[f]requently – probably most frequently – the warrant papers including supporting affidavits are open for inspection by the press and public in the clerk's office after the warrant has been executed."). Further, the fact that there is a common law tradition of access to warrant materials weighs heavily in favor of recognition of the right.  *See Nixon*, 435 U.S. at 597 (stating that "[i]t is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents).  These facts satisfy the first prong of the Supreme Court's test for determining whether a qualified First Amendment right attaches to a particular type of document.  *Press-Enterprise II*, 478 U.S. at 8.

The second-prong (*i.e.*, whether "public access plays a significant positive role in the functioning of the particular process in question") also weighs in favor

of recognizing the right. *Id.* As a general matter, openness of judicial processes and documents "gives assurance that established procedures are being followed and that deviations will become known[.]" *Press-Enterprise I*, 464 U.S. at 508. It also promotes the appearance of fairness by "demonstrat[ing] to the public that judicial processes are fair and that there is nothing to hide." *In re Application of New Times Co.*, 585 F.Supp.2d at 90. As noted by the Supreme Court, "[p]eople in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing." *Richmond Newspapers,* 448 U.S. at 572. Here, there are 5,300 investors and perhaps hundreds of thousands of readers who have been prohibited from observing the government's shuttering of Fair Finance.

With respect to warrants, openness plays a significant positive role in the functioning of the criminal justice system. "Public access to warrant materials serves as a check on the judiciary because the public can ensure that judges are not merely serving as a rubber stamp for the police." *In re Application of New Times Co.*, 585 F.Supp.2d at 90 (*citing U.S. v. Leon*, 468 U.S. 897, 917 n. 18 (1984)) (stating that closer supervision is a way to control magistrates merely serving as a "rubber stamp for police" when approving search warrants) and *Secretarial Area*, 855 F.2d at 573 (stating that warrant materials are "important to the public's understanding of the function and operation of the judicial process and the criminal

justice system and may operate as a curb on prosecutorial or judicial misconduct"). Because both prongs of the *Press-Enterprise II* test have been satisfied, this Court should hold that a qualified First Amendment right of access attaches to post-execution, pre-indictment search warrant materials.[17]

## **CONCLUSION**

For all of the foregoing reasons, Newspapers respectfully request that this Court reverse the district court's decision denying their Motion to Unseal Search Warrant Documents and remand the matter for further proceedings.

Respectfully submitted,

/s/ Karen C. Lefton
Karen C. Lefton (0024522)
BROUSE McDOWELL, L.P.A.
388 South Main Street, Suite 500
Akron, OH 44311
Telephone: 330-535-5711
Facsimile: 330-253-8601
E-mail: klefton@brouse.com

Attorney for Appellants
The Akron Beacon Journal and
the Indianapolis Business Journal

---

[17] As previously explained, "the press and the public possess a qualified First Amendment right of access to docket sheets[.]" *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 86 (2d Cir. 2004).

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 9,193 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).  This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2003 in 14 point font and Times New Roman.

/s/ Karen C. Lefton
Karen C. Lefton (0024522)
BROUSE McDOWELL, L.P.A.
388 South Main Street, Suite 500
Akron, OH 44311
Telephone:  330-535-5711
Facsimile:  330-253-8601
E-mail:  klefton@brouse.com

Attorney for Appellants
The Akron Beacon Journal and
the Indianapolis Business Journal

# DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

| Record Entry No. | Date | Description of Document |
|---|---|---|
| 1 | 12/17/2009 | Motion to Unseal Search Warrant Documents |
| 4 | 1/4/2010 | Amended Motion to Unseal (with exhibits) |
| 11 | 1/21/2010 | Government's Memorandum in Opposition to Amended Motion to Unseal Search Warrant Documents |
| 14 | 1/22/2010 | Motion for Leave to Re-File Declaration |
| 15 | 1/26/2010 | Opposition to Motion for Leave to Re-file (with exhibits) |
| | 2/11/2010 | Minute Entry |
| 27 | 2/16/2010 | Notice of Dismissal of Action Filed in the United States District Court for the Southern District of Indiana |
| 28 | 3/9/2010 | Interim Report & Recommendation |
| 30 | 3/19/2010 | Objection to Report & Recommendation |
| 31 | 3/30/2010 | Response to Objection to Report & Recommendation |
| 32 | 4/12/2010 | Order |
| 35 | 4/26/2010 | Reply to Government's Memorandum in Opposition to Amended Motion to Unseal Search Warrant Documents |
| 36 | 7/6/2010 | Order |
| 37 | 8/10/2010 | Memorandum Opinion and Order |
| 38 | 8/10/2010 | Judgment Entry |
| 39 | 8/13/2010 | Motion to Supplement Docket |
| 42 | 9/9/2010 | Notice of Appeal |

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this BRIEF OF APPELLANTS THE AKRON BEACON JOURNAL AND THE INDIANAPOLIS BUSINESS JOURNAL is being filed electronically, on this 6th day of December, 2010. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's system.

/s/ Karen C. Lefton
Karen C. Lefton (0024522)
BROUSE McDOWELL, L.P.A.
388 South Main Street, Suite 500
Akron, OH 44311
Telephone: 330-535-5711
Facsimile: 330-253-8601
E-mail: klefton@brouse.com

Attorney for Appellants
The Akron Beacon Journal and
the Indianapolis Business Journal

794913