# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

In re: IN THE MATTER OF THE SEARCH
OF FAIR FINANCE, FAIR FINANCIAL, OBSIDIAN ENTERPRISES
AND TIMOTHY S. DURHAM

AKRON BEACON JOURNAL; INDIANAPOLIS BUSINESS JOURNAL
Movants-Appellants

and

INDIANAPOLIS STAR; WALL STREET JOURNAL
Movants

v.

UNITED STATES OF AMERICA
Interested Party - Appellee

On Appeal from the United States District Court
for the Northern District of Ohio
Eastern Division

## REPLY BRIEF OF APPELLANTS THE AKRON BEACON JOURNAL
## AND THE INDIANAPOLIS BUSINESS JOURNAL

KAREN C. LEFTON
CAROLINE L. MARKS
KERRI L. KELLER
**BROUSE McDOWELL, L.P.A.**
388 South Main Street, Suite 500
Akron, OH 44311

Telephone: 330-535-5711
Facsimile: 330-253-8601
E-mail:  klefton@brouse.com
       cmarks@brouse.com
       kkeller@brouse.com

Attorneys for Appellants
The Akron Beacon Journal and
the Indianapolis Business Journal

# TABLE OF CONTENTS

SUMMARY OF ARGUMENT .................................................................................. 1

ARGUMENT ...................................................................................................... 3

I.   The District Court abused its discretion by not weighing
     the public's interest in access against the government's
     interest in sealing before sealing each of the search warrant
     documents, including the docket ................................................................ 3

     A.  This analysis is necessarily fact and context specific .................... 3

     B.  The district court improperly focused exclusively on
         the government's interest in its sealing decision ........................... 5

     C.  Each sealed document must meet the criteria
         established for sealing ................................................................ 7

II.  The Newspapers' assertion of a First Amendment right of
     access applies to all judicial records at issue, including the
     docket ...................................................................................................... 7

     A.  The docket passes the First Amendment's
         "experience and logic" test ........................................................ 7

     B.  The notice requirement is unsatisfied with no public
         record ........................................................................................ 9

     C.   The government incorrectly focuses on the "pre-
         search" application process........................................................ 10

III. The duration of a sealing order may not be unlimited ......................... 11

IV.  The government's introduction of other types of sealed
     documents is a red herring ................................................................... 14

CONCLUSION .................................................................................................. 15
CERTIFICATE OF COMPLIANCE .................................................................... 16
CERTIFICATE OF SERVICE ............................................................................ 17

# TABLE OF AUTHORITIES

## Cases

*Brown & Williamson Tobacco Corp. v. F.T.C.,* 720 F2d. 1165 (6th Cir. 1983) ........................................................................... 4

*East Side Ophthalmology*, 1996 WL 384891 (S.D.N.Y. 1996) ............................. 14

*Harford Courant Co. v. Pellegrino*, 380 F.3d 83 (2d Cir. 2004) ........................ 8, 9

*In re Search Warrant for Secretarial Area Outside Office of Gunn,* 855 F.2d 569 (8th Cir. 1988) ............................................................ 11

*In re Search Warrant,* No. M-3-94-80, 1996 WL 1609166 (S.D. Ohio Aug. 20, 1996) ................................................................................... 4

*In re Searches of Semtex Indus., Corp.*, 876 F.Supp. 426 (E.D.N.Y. 1995) ........................................................................................... 14

*Matter of EyeCare Physicians of America,* 100 F.3d 514 (7th Cir. 1996) ........................................................................................... 7

*Matter of EyeCare Physicians of America*, 910 F.Supp. 414 (N.D. Ill. 1996) ............................................................................... 11, 12, 14

*Media General Operations, Inc. v. Buchanan*, 417 F.3d 424 (4th Cir. 2005) ............................................................................. 4, 7, 9, 10

*Nixon v. Warner Communications, Inc.,* 435 U.S. 589 (1978) ............................... 7

*Press-Enterprise Co. v. Superior Court of California for the County of Riverside,* 478 U.S. 1 (1986) ........................................................... 8

*Rushford v. New Yorker Magazine, Inc.,* 846 F.2d 249 (4th Cir. 1988) .............. 5, 7

*U.S. v. Slough*, 677 F.Supp.2d 296 (D.D.C. 2010) ........................................... 14

*Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565 (6th Cir. 2008) ................ 12

**Statutes**

Fed. R. Crim. P. 41(g) .......................................................................... 11

# SUMMARY OF ARGUMENT

At its core, this case concerns whether the government may effectively close down a publicly patronized business without public disclosure and without the public's interest in access to information being fully weighed and considered by the district court. The closing of Fair Finance had the effect of leaving 5,300 investors without their money. The Newspapers have been unable to find any case in any circuit that has similar facts: no docket, no notice, no hearing and, ultimately, no access to any information.

In its brief, the government makes repeated assertions that are factually and legally unsupported. It attempts to minimize the long-held constitutional protections that differentiate a democracy like the United States, where government is open and courts are accessible, from other governments, where there is no tradition of access. In fact, the government advocates a system in which courts can unilaterally decide "which sealed matters should be publicly docketed and under what circumstances a matter might not be publicly docketed at all. . . ." [Appellee's Brief, p. 20]. It maintains that such decisions are nothing more than "internal policy issues in the operation of the federal courts." [*Id.*]. In advocating such an approach, however, the government pays short shrift to the long-established case law that holds otherwise and which requires careful analysis and

consideration of the constitutional rights at issue – rights that are too important to be glossed over.

Further, the government either misunderstands or purposely misconstrues the Newspapers' position in this appeal. To clarify, with respect to the overall presumption of access, the Newspapers argue that the district court must weigh the actual facts when determining whether the government's interest in secrecy outweighs the public's interest in access. With respect to the docket, the Newspapers advocate that the constitutional right of access is based on the "experience and logic" test, which must be properly applied and followed. With respect to the duration of a sealing order, the Newspapers maintain that even though a court has discretion, a sealing order cannot last forever. Important for this appeal is the fact that the Newspapers are seeking to protect the constitutional right of access to search warrant documents *post search*. They are not contesting the pre-search sealing process or the search warrant application process. This is a critical distinction.

The government also attempts to capitalize on fear of openness. It states that the Newspapers' position is likely to pose "dangers" that are "real and significant." [Appellee's Brief, p. 20]. The Newspapers believe that it is far more dangerous to enable the government to shut down a financial enterprise with no public oversight. And notably, fifteen months after the Fair Finance offices were

shuttered and records were seized, the government attempts to justify the continued

sealing of the records based on the fact that "the investigation is on-going" and that

"[n]o charges have been filed and no arrests have been made." [Appellee's Brief,

p. 3]. Thus, the government essentially proposes a system wherein matters can be

indefinitely shrouded in secrecy. This sort of system, however, is at odds with the

Constitution.

## ARGUMENT

I.    **The District Court abused its discretion by not weighing the public's interest in access against the government's interest in sealing before sealing each of the search warrant documents, including the docket.**

   **A. This analysis is necessarily fact and context specific.**

The public's only information about the shuttering of Fair Finance has been

what it reads in the newspapers, information that is incomplete due to the dearth of

accessible court documents pertaining to the search of at least eight Fair Finance

offices and the seizure of voluminous records and numerous computers. The

public's interest in access, however, was not weighed against the government's

interest in secrecy when the presumption of access was overcome, even though

such a balancing test is required by long-standing common law, as acknowledged

by both the government and the district court.

The government calls the facts of the case "irrelevant." [Appellee's Brief, p.

4, fn 1]. However, it does concede that there is, at the very least, a common law

right of access to these documents.  [Appellee's Brief, p. 6 (citing *Media General Operations, Inc. v. Buchanan*, 417 F.3d 424, 428 (4th Cir. 2005) and implicitly acknowledging that "[t]he press and the public have a common law right of access to judicial documents.")].    The government further acknowledges that "[t]he search warrant materials at issue here are judicial documents, and there is a common-law presumption of access to those documents."  [Appellee's Brief,  p. 7].

All parties and the district court agree that there is a presumption of access to judicial documents.  As the district court observed in its opinion, "[u]nder the common law, there is a strong presumption 'in favor of public access to court proceedings and records.'" [Record Entry No. 37, p. 4, citing *Brown & Williamson Tobacco Corp. v. F.T.C.,* 720 F2d. 1165, 1179 (6th Cir. 1983) (stating that "the press and the public have a common law right of access to judicial documents")].  "Because the right is a qualified one, the application of the right in any given context requires a balancing of the competing interests of those who seek access and those who seek to deny it." [Record Entry No. 37, p. 4 (citing *In re Search Warrant,* No. M-3-94-80, 1996 WL 1609166, at *10 (S.D. Ohio Aug. 20, 1996))].[1]  "Therefore, the weighing to be performed by [the district court] is necessarily highly fact and context specific." [Record Entry No. 37, p. 5].

---

[1]    The Newspapers filed a "Designation of Relevant District Court Documents" with their Appellate Brief.  There are no new district court documents contained in this Reply.

With a qualified common law right of access established, the district court understood that it was required to weigh the government's interest in secrecy against the public's interest in disclosure. The government's raiding of the Fair Finance investment company resulted in more than 5,300 investors losing about $200 million dollars. These facts establish a substantial public interest in all of the documents pertaining to the search of Fair Finance ("Search Warrant Documents").[2] It is the government's burden to rebut the common law presumption of access by demonstrating that its "countervailing interests heavily outweigh the public interest in access." [Appellee's Brief, p. 7, citing *Rushford v. New Yorker Magazine, Inc.,* 846 F.2d 249, 253 (4th Cir. 1988)]. That burden could not have been met unless and until the public's interest was evaluated and assessed.

**B.** **The district court improperly focused exclusively on the government's interest in its sealing decision.**

The government concedes that on November 24, 2009, a search warrant was executed by federal law enforcement officers at the Ohio offices of Fair Finance Company located at 815 East Market Street, Akron, Ohio. [Appellee's Brief, p. 4]. The government contends that on November 23, 2009, the application, search

---

[2] This includes all court documents pertaining to the search of Fair Finance, including the Application for a Search Warrant, Search Warrant, Affidavit(s) in Support of Search Warrant, Inventory, Return, Motion to Seal, Order Sealing, Docket, Halliden Declaration and any other document relating to the search of Fair Finance, whether disclosed so far in this litigation or not.

warrant and affidavit in support of the search warrant had been ordered sealed and to remain sealed until further order of the Court. [*Id.*]. Further, the government contends that on November 25, 2009, a federal law enforcement agent returned to the magistrate the original search warrant with an attached inventory of the property seized, presumptively included in the magistrate's order sealing the Search Warrant Documents. [*Id.*]. Further, the government concedes that "[a]ll the search warrant documents in Akron and Indianapolis were sealed, and the docket on which those sealed documents were docketed is not available to the public." [*Id.*]. These facts would be unknown to the public *but for* this litigation.

With the above disclosures made solely as a result of this litigation, it is disingenuous for the government to suggest that "most of the facts cited by the newspapers are irrelevant to the issues here." [Appellee's Brief, p. 4]. Indeed, the balancing test imposed on the district court makes the underlying facts *essential* to the process. The fact that a publicly patronized finance company, holding about $200 million invested by about 5,300 people, was shuttered by the government literally overnight, without warning to the public or the investors, must be balanced against the government's interest in secrecy. That the search warrant documents are still being withheld makes the public interest even more important, requiring that it be balanced against the government's interest in secrecy.

**C.**    **Each sealed document must meet the criteria established for sealing.**

The government mistakenly asserts that "there is no requirement that the district court parse each of the search warrant documents and make specific findings as to sealing each one." [Appellee's Brief, p. 13]. As stated above, and as set forth in the government's brief, there is indeed such a requirement. To seal a record, the party requesting sealing must demonstrate that the record meets the criteria as set out in *Nixon v. Warner Communications, Inc.,* 435 U.S. 589 (1978)*; see also Rushford v. New Yorker Magazine, Inc.,* 846 F.2d 249, 253 (4th Cir. 1988); *Media General Operations, Inc., v. Buchanan,* 417 F.3d 424, 428 (4th Cir. 2005); *Matter of EyeCare Physicians of America,* 100 F.3d 514, 517 (7th Cir. 1996). It is not about "parsing" each one. It is about *overcoming the presumption of access*. The government must demonstrate that each record should be sealed because the government's interest in secrecy *outweighs* the public's interest in access. Again, there is a presumption of access, not a presumption of secrecy.

**II.**    **The Newspapers' assertion of a First Amendment right of access applies to all judicial records at issue, including the docket.**

**A.**    **The docket passes the First Amendment's "experience and logic" test.**

The government mistakenly asserts that "the newspapers do not claim that public access to the docket is a Constitutional right." [Appellee's Brief, p. 17]. To clarify, where Appellants' Principal Brief referred to "Search Warrant

Documents," it was intended to encompass *all* Search Warrant Documents – any document pertaining to the search of Fair Finance, whether it had been enumerated by name in the brief.[3]   Moreover, the Newspapers specifically asserted that "the press and the public possess a qualified First Amendment right of access to docket sheets," citing *Harford Courant Co. v. Pellegrino*, 380 F.3d 83, 96 (2d Cir. 2004). [Appellants' Brief, p. 12].   The Newspapers later repeated this assertion in the section of their principal brief addressing the recognition of a First Amendment right of access.  [*Id.*, p. 39, fn. 17].

Nevertheless, with regard to the right of access to the docket, the government makes the bold assertion that "the district court's internal clerical procedures are presumably the result of careful consideration by the Judicial Branch of the government," but it cites to no authority.  [Appellee's Brief, p. 17]. The recognition of a First Amendment right of access, however, is based on the "experience and logic test," which the government accurately cites in its brief:

> [T]wo requisites must be satisfied:  First, the place and process must "have historically been open to the press and general public." *Press-Enterprise Co. v. Superior Court of California for the County of Riverside,* 478 U.S. 1, 8 (1986)(*"Press-Enterprise II"*).   Second, public access must "play[] a significant positive role in the functioning of the particular process in question." *Id.*  Both elements must be satisfied.

---

[3]     Simply, the Newspapers are not certain that they even know about all of the Search Warrant Documents, especially where there might be multiple affidavits, multiple returns, and multiple inventories.  They should not have to guess.

[Appellee's Brief, p. 22-23 (additional citations omitted)]. As it pertains to the docket in particular, dockets have long been held to be publicly accessible, and logic dictates that they must be, as the lower court speaks only through its docket. *See Harford Courant Co.*, 380 F.3d at 94-96. In all its research, the Newspapers were unable to find a single case in which a docket was sealed and remained that way. Finally, the government asserts that "[a] host of docket numbers and general descriptions would not have helped [the Newspapers]." [Appellee's Brief, p. 18]. To the contrary, just one docket number and perhaps the address of the property searched would have been helpful. Revealing that information would not have jeopardized any investigation, as by the time the public became aware of the searches, the offices had already been shuttered and the effect of the government's actions was being felt by investors all over northeastern Ohio and southern Indiana. This information should most certainly have been made public as soon as the search was concluded.

**B.    The notice requirement is unsatisfied with no public record.**

A basic tenet of the American judicial system is that the parties and public receive actual notice of pleadings to enable meaningful review of judicial activity. "[T]he notice requirement is fulfilled by docketing the 'order sealing the search warrant documents,' which gives interested parties the opportunity to object after the execution of the search warrants." *Media General,* 417 F. 3d at 427 (internal

citation omitted). In contrast, the government contends, despite quoting heavily and inaccurately from *Media General*,[4] that notice is *never* required, that dockets need *never* be made public, and that orders sealing records shall remain confidential until someone finds out about them, has the tenacity to track them down and the temerity to challenge them.

## C. The government incorrectly focuses on the "pre-search" application process.

With regard to the First Amendment right of access to court documents, the government argues that the Search Warrant Documents do not meet the "experience and logic" test because neither the issuance of, nor the application process for, search warrants is public. [Appellee's Brief, pp. 23-24]. Thus, the government predicates its arguments upon the accessibility of search warrant materials *at the time they are applied for or issued,* rather than when they are returned to the clerk, and has focused on the perils of pre-search disclosure. [*Id.*].

This appeal, however, involves the *post-search* availability of search warrant materials. The Newspapers have never contended that they have pre-

---

[4]    For example, the government inaccurately states that the "Fourth Circuit affirmed the sealing of all search warrant documents in *Media General Operations, Inc.*" [Appellee's Brief, p. 12]. Actually, only affidavits were sealed in that case. *See Media General,* 417 F.3d at 427 ("The search warrants, affidavits and inventories of items seized were retuned to the clerk's office for filing after the execution of the warrants. With the exception of the affidavits, all other pleadings and documents, including the returns and the motions to seal are not implicated by the sealing order and should have been available to the public upon request.") (internal citation omitted).

search access to search warrant materials. And many of the perils cited by the government simply do not apply in the post-search situation. Once a search is completed, the subject can no longer be tipped off, the property has been seized, the inventory has been prepared, and the search warrant and accompanying documents have been returned to the clerk for filing pursuant to Fed. R. Crim. P. 41(g). By that time, it is no secret that a search has been conducted. At that point, experience and logic dictate that there should be public access pursuant to the First Amendment. Moreover, unlike in the pre-search situation, the place and process pertaining to search warrants *after execution* have historically been open to the press and the general public. *In re Search Warrant for Secretarial Area Outside Office of Gunn,* 855 F.2d 569, 573 (8th Cir. 1988). If this Court determines that there is a First Amendment right of access, it means merely that the government would have to demonstrate a compelling governmental interest in sealing the documents which overrides the public interest in access before post-search warrant materials could be withheld. *See id.* That seems a small price to pay for transparency in a democracy.

## III. The duration of a sealing order may not be unlimited.

"The extraordinary step of sealing judicial records cannot last forever." *Matter of EyeCare Physicians of* America, 910 F.Supp. 414, 417 (N.D. Ill. 1996) (granting motion to seal for an undisclosed, but definite period of time). The

government inappropriately cites *EyeCare* for the proposition that "the decision as to access to [judicial records and documents, *including the duration of time they may be sealed*] is one best left to the discretion of the trial court," because it neglects to mention that the court in *EyeCare* sealed only the affidavit and modified its order to add an expiration date. [Appellee's Brief, pp.15-16 (emphasis in original)]. *EyeCare,* 910 F.Supp. at 422.

The government contends that the district court's decision to close the case was not an abuse of discretion. According to the government, the district court completely disposed of the issues before it and was not required to keep the matter open indefinitely. Without citing any authority, the government argues that the Newspapers "are not prohibited in any manner from litigating the matter in the future." [Appellee's Brief, p. 15]. That is a bit misleading, as any attempt at unsealing these documents at a later date would most certainly be met with a motion to dismiss on grounds of *res judicata*. *See generally Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 577-78 (6th Cir. 2008) (noting that a claim is barred by *res judicata* where there is (1) a final decision on the merits; (2) a subsequent action between the same parties or their privies; (3) an issue in the subsequent action which was litigated or which should have been litigated; and (4) an identity of causes of action).

Further, contrary to the government's assertion, the Newspapers do not suggest that the district court serve as an "overseer" of the "conduct and timeliness of the government's investigation." [Appellee's Brief, p. 15]. Rather, the Newspapers' position is that the district court erred in closing the case because it is improper to *indefinitely* seal judicial records. Rather than address the case law that the Newspapers cited to this effect, the government points to various illusive "burdens" on both on itself and on the district court which it believes justifies closing the underlying case. It claims that the government would be unfairly "subject to ongoing jurisdiction in a tangential matter" and that the district court would be burdened because it faces challenges in managing its busy docket. [*Id.* at p. 16].

With respect to the alleged burden on the district court, the Newspapers are very sensitive to the challenges of the courts in managing busy dockets, but they respectfully submit that keeping this case open would present no unreasonable burden on the district court. Courts routinely stay cases and docket matters for subsequent review. For the district court to have scheduled this matter for subsequent review would have placed little burden on it, but would have protected the constitutional rights of the Newspapers and the public. With respect to the alleged burden on the government, any such administrative burden does not rise above the underlying constitutional rights.

As the Newspapers have previously stated, courts typically: (1) order the documents unsealed on a particular date but give the government the opportunity to show why they should not be unsealed on that date; (2) set a date for revisiting whether the documents should remained sealed; or, (3) maintain jurisdiction over the matter to permit a renewed motion for unsealing in the future. *See, e.g., In re Searches of Semtex Indus., Corp.*, 876 F.Supp. 426, 432 (E.D.N.Y. 1995) (ordering documents unsealed as of a particular date); *U.S. v. Slough*, 677 F.Supp.2d 296, 300 (D.D.C. 2010) (ordering the clerk to "unseal all materials relating to the Kastigar hearing on February 2, 2010"); *East Side Ophthalmology*, 1996 WL 384891, at *3 (S.D.N.Y. 1996) (retaining jurisdiction and ordering that "[t]he denial of this motion [to unseal was] without prejudice to its renewal in the future."); *Eyecare*, 910 F.Supp. at 417 (retaining jurisdiction over the matter and ordering documents to remain under seal "until the Magistrate Judge unseals the original affidavit or until further order of this court"). Any of these three alternatives to outright closing the case would have been minimally burdensome on both the government and the district court and would have preserved the constitutional rights at issue.

## IV. The government's introduction of other types of sealed documents is a red herring.

In this appeal Newspapers are asserting a right only to post-search search warrant documents. The Newspapers are not litigating sealed criminal complaints,

sealed plea agreements, or any of the laundry list of other sealed documents in the government's brief. [Appellee's Brief, pp. 16-17]. The Newspapers ask that this Court focus on the issues present in this case, which deals with the sealing of post-search search warrant documents and docket sheets. The government is putting hypothetical issues before this Court when, in this case, under these facts, the district court erred.

## CONCLUSION

For all the reasons set forth here and in their principal brief, Appellants respectfully request that this Court reverse the district court's decision denying their Motion to Unseal Search Warrant Documents and remand for further proceedings.

Respectfully submitted,

/s/ Karen C. Lefton
Karen C. Lefton (0024522)
Caroline L. Marks (0071150)
Kerri L. Keller (0075075)
BROUSE McDOWELL, L.P.A.
388 South Main Street, Suite 500
Akron, OH 44311
Telephone: 330-535-5711
Facsimile: 330-253-8601
E-mail: klefton@brouse.com

Attorneys for Appellants
The Akron Beacon Journal and
the Indianapolis Business Journal

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 3,364 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2003 in 14 point font and Times New Roman.

/s/ Karen C. Lefton
Karen C. Lefton (0024522)
BROUSE McDOWELL, L.P.A.
388 South Main Street, Suite 500
Akron, OH 44311
Telephone: 330-535-5711
Facsimile: 330-253-8601
E-mail: klefton@brouse.com

Attorney for Appellants
The Akron Beacon Journal and
the Indianapolis Business Journal

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this REPLY BRIEF OF APPELLANTS THE AKRON BEACON JOURNAL AND THE INDIANAPOLIS BUSINESS JOURNAL is being filed electronically, on this 11th day of February, 2011. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's system.

  /s/ Karen C. Lefton
Karen C. Lefton (0024522)
BROUSE McDOWELL
388 South Main Street, Ste 500
Akron, Ohio 44311
Telephone: 330.535.5711
Facsimile: 330.253.8601
Email: klefton@brouse.com

Attorneys for Appellants
The Akron Beacon Journal and
the Indianapolis Business Journal

7997934